IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,           )
                                    )
        vs.                         ) Criminal No. 03-144
                                    )
MARIO OLIVER KOCH,                  )
                                    )
        Defendant.                  )

**MEMORANDUM OPINION**

Pending before the Court is a motion filed by Defendant Mario Oliver Koch ("Koch"), seeking to dismiss an indictment entered in May 2003. (Doc. No. 13, "Mot. Dis.") The United States ("Government") opposes the motion. For the reasons set forth below, the motion to dismiss the indictment is denied.

I.  **BACKGROUND**

According to the indictment, between January 2000 and January 2002, Mario Oliver Koch illegally acquired the numbers of credit cards issued by Parkvale Savings Bank to its customers and used those numbers to obtain money and property via the internet. He also used internet e-mail to negotiate the sale of a website domain name he had purchased using an illegally obtained credit card number to an individual located in the Western District of Pennsylvania. On May 14, 2003, Koch was indicted on one count of wire fraud in violation of 18 U.S.C. § 1343. (*See* Doc. Nos. 1 and 3.)

Koch's arraignment was scheduled for June 5, 2003, then rescheduled for June 19, 2003. In each instance, the arraignment was postponed due to the fact that Koch, a German citizen residing in Ingolstadt, Germany, was unable or declined to appear. Koch's attorney moved for the indefinite continuation of the arraignment because Defendant was not within the jurisdiction of the Court and had not given his counsel authority to enter a plea or take any other steps on his behalf. (Doc. No. 6.) On July 31, 2003, further proceedings in this matter were postponed indefinitely inasmuch as Koch appeared to the Court to be a fugitive. (Doc. No. 8.)

## II. THE PENDING MOTION

With the exception of two *ex parte* motions filed under seal in 2003-2004, neither of which moved the case along, the indictment apparently sat undisturbed in the U.S. Attorney's archives until October 15, 2010, when Koch's counsel filed the pending motion. Koch argues that the Government has taken no steps to extradite or otherwise bring him within the jurisdiction of this Court even though the Government was aware of his location in Germany where he has lived and worked openly for the intervening seven years. In the motion, Koch claims that on "numerous occasions," his counsel requested the Government to either act on or dismiss the indictment, but no action had been taken. He argues that this failure to prosecute

2

deprives him of his constitutional rights to due process, fundamental fairness, and a speedy trial; in addition, the failure to prosecute in a timely manner constitutes a waiver of jurisdiction. Finally, Koch contends he has suffered presumptive prejudice and/or actual prejudice as a result of the Government's failure to act as reflected in "unnecessary anxiety and concern, unreasonable damage to reputation, and unfair limitation and restriction of [his] freedom to travel and to otherwise conduct his lawful business." (Mot. Dis., ¶ 11.) Since the Government "apparently has no serious interest" in pursuing the charges against him, the indictment should be dismissed with prejudice. (Id., ¶¶ 12-13.)

The Government opposes the motion, arguing that as a non-citizen who is not presently residing in the United States, Koch has no constitutional rights to due process or a speedy trial. (Response to Motion to Dismiss Indictment, Doc. No. 16, "Govt. Resp.") The Government also extends an invitation for Defendant to come to this country at any time to answer the charges against him. (Id.)

In reply, Koch notes that the Government has failed to recognize it is bound by the Constitution and, because he was indicted and has contested jurisdiction, "the government has 'a constitutional duty to make a diligent, good faith effort' to locate, apprehend and bring him to trial." (Defendant's Reply

3

to Government's Response to Motion to Dismiss, Doc. No. 17, ¶ 5, *quoting* Smith v. Hooey, 393 U.S. 374, 383 (1969).) Moreover, there is no evidence that any Government agency took action against him after the Court suspended all further proceedings in July 2003. Finally, since the Government failed in its response to set forth any legitimate reasons for failing to prosecute this matter or otherwise move forward, the implication is that the U.S. Attorney "intends to let this case languish indefinitely," thereby increasing the prejudice to Defendant. (Id., ¶¶ 10-11.)

### III. ANALYSIS

The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right to a speedy. . . trial." U.S. Const. amend. VI. The Government's first -- and in fact, only - argument is that as an alien who is not physically present in the United States, Koch has no constitutional rights to due process or a speedy trial. Because he has no such rights, his claim that those rights have been violated must necessarily fail. To support this argument, the Government relies on three cases: United States v. Curtiss-Wright Export Corp., 299 U.S. 304, 318 (1936);[1] Johnson v.

---

[1] Other than the general principle that "[n]either the Constitution nor the laws passed in pursuance of it have any force in foreign territory unless in respect of our own citizens," Curtiss-Wright Export Corp. has little bearing on the issues now before the Court. The primary question in that case was whether a joint resolution of Congress,

4

Eisentrager, 339 U.S. 763 (1950); and United States v. Verdugo-Urquidez, 494 U.S. 259 (1990). (Govt. Resp. at 1-2.)

There is no question that were Koch physically standing before this Court, he would be entitled to argue that the Sixth Amendment right to a speedy trial applied to him, despite the fact that he is not a citizen of the United States. The Supreme Court has repeatedly held that foreign nationals within the territory of the United States are entitled to such

---

under which the President had declared certain arms sales to Bolivia to be illegal, was an unconstitutionally broad delegation of power. The Court concluded that it was not, inasmuch as the federal government was invested with all powers pertaining to international relations and external sovereignty, whether or not the Constitution affirmatively granted to Congress and the President each and every one of the powers necessary to fulfill those international obligations. In context, the phrase quoted by the Government states:
> [T]he investment of the federal government with the powers of external sovereignty did not depend upon the affirmative grants of the Constitution. The powers to declare and wage war, to conclude peace, to make treaties, to maintain diplomatic relations with other sovereignties, if they had never been mentioned in the Constitution, would have vested in the federal government as necessary concomitants of nationality. Neither the Constitution nor the laws passed in pursuance of it have any force in foreign territory unless in respect of our own citizens. . .and operations of the nation in such territory must be governed by treaties, international understandings and compacts, and the principles of international law. As a member of the family of nations, the right and power of the United States in that field are equal to the right and power of the other members of the international family. Otherwise, the United States is not completely sovereign.

Curtiss-Wright Export Corp., 299 U.S. at 318 (internal citations omitted.

The case did not address the question of whether the due process provision of the Fifth Amendment or the speedy trial provision of the Sixth Amendment applied to foreign citizens not present in the United States at the time they sought the protection of those Amendments, the issue under deliberation here.

constitutional protections. *See*, e.g., Wong Wing v. United States, 163 U.S. 228, 238 (1896) ("all persons within the territory of the United States are entitled to the protection guaranteed by" the Fifth and Sixth Amendments); Kwong Hai Chew v. Colding, 344 U.S. 590, 596-597 (1953) (a lawful permanent resident alien is a "person" within the meaning of the Fifth Amendment and entitled to a hearing before being permanently excluded from the U.S.); Graham v. Richardson, 403 U.S. 365, 376 (1971) (resident aliens may raise equal protection challenges under the Fourteenth Amendment); Plyler v. Doe, 457 U.S. 202, 212 (1982) (the provisions of the Fourteenth Amendment "are universal in their application to all persons within the territorial jurisdiction"); and Sanchez-Llamas v. Oregon, 548 U.S. 331, 350 (2006) ("A foreign national detained on suspicion of crime, like anyone else in our country, enjoys under our system the protections of the Due Process Clause," including the right to an attorney and protection against compelled self-incrimination.) Conversely, "[i]t is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders." Zadvydas v. Davis, 533 U.S. 678, 693 (2001) (recognizing that "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens,

6

whether their presence here is lawful, unlawful, temporary, or permanent"); *see also* Verdugo-Urquidez, 494 U.S. at 266 (holding that the Fourth Amendment did not apply when U.S. agents searched the residence of and seized property belonging to a Mexican citizen in Mexico because "the purpose of the Fourth Amendment was to protect the people of the United States against arbitrary action by their own government; it was never suggested that the provision was intended to restrain the actions of the Federal Government against aliens outside of the United States territory"); and Eisentrager, *supra* (rejecting Fifth Amendment arguments and a habeas corpus petition brought by German nationals who had been captured in China during World War II, tried before a U.S. military commission, then taken to a U.S. military base prison in Germany to serve their sentences.)[2]

Numerous courts have held that a foreign national may raise his or her Sixth Amendment right to a speedy trial and, if successful, is entitled to have the indictment dismissed.[3] *See*,

---

[2] *But see* Boumediene v. Bush, 553 U.S. 723 (2008), holding that prisoners held at Guantanamo Bay, a location where the United States was not sovereign, retained the constitutional privilege of seeking relief via the writ of habeas corpus. "It is true that before today the Court has never held that noncitizens detained by our Government in territory over which another country maintains *de jure* sovereignty have any rights under our Constitution." Id., 553 U.S. at 770.

[3] In Barker v. Wingo, 407 U.S. 514 (1972), and Doggett v. United States, 505 U.S. 647 (1992), the Supreme Court set out "the criteria by which the speedy trial right is to be judged." Barker, id. at 516. In a fact-driven, ad hoc balancing test, the court must examine four factors: (1) the length of the delay; (2) the reason(s) for the

7

e.g., United States v. McDonald, 172 F. Supp.2d 941 (W.D. Mich. 2001);[4] United States v. Leaver, 358 F. Supp.2d 255 (S.D. N.Y 2004);[5] United States v. Ottey, Crim. No. 00-186, 2007 U.S. Dist. LEXIS 61335 (W.D. Pa. Aug. 21, 2007);[6] and United States v. Dionisio, Crim. No. 04-30, 2008 U.S. Dist. LEXIS 93652 (W.D. Wis. Nov. 17, 2008).[7] However, with one exception, the Court has

---

delay; (3) whether and when the defendant asserted his speedy trial right; and (4) whether the defendant was prejudiced by the delay. Barker, id. at 530-532. In examining the last criterion, the court should consider three distinct types of prejudice the speedy trial right was designed to protect: oppressive pretrial incarceration, anxiety and concern on the part of the accused, and possible impairment of the defense. Id. at 532. Because we conclude Koch is not entitled to the protection of the Sixth Amendment as long as he is outside the jurisdiction of the United States, we do not perform this analysis.

[4] Indictment dismissed where the Government had failed to seek extradition of a Bahamian national for 15 years despite knowing his location for the greater part of that period; McDonald had contacted the Government on several occasions to discuss extradition and expressed an interest in returning the United States to stand trial; and it was highly unlikely he could receive a fair trial because the primary witness to the alleged conspiracy had been placed in a witness protection program and was unavailable.

[5] Indictment dismissed where 11 years elapsed between alleged crime and arrest; the Government was primarily responsible for the delay because despite the fact that Leaver was living openly in France and England during that period, the investigation was allowed to languish while the Government "sat back and waited passively for Leaver to turn up;" and the defendant would be prejudiced at trial because important witnesses had died in the interim.

[6] Indictment dismissed where Ottey, a citizen of the United Kingdom who was unaware that he had been indicted on drug charges, had lived openly in England for seven years; the Government conceded it had made no efforts to find him; and the court was convinced Ottey's right to a fair trial would be negatively affected by faded memories and/or the unavailability of witnesses.

[7] Indictment dismissed where a Filipino doctor who had been indicted in 2004 for defrauding the United States was not arrested until 2008

8

been unable to find any reported cases in which the court found that the Sixth Amendment right to a speedy trial attached *before* the defendant was in the United States.[8] In United States v. Diacolios, 837 F.2d 79 (2d Cir. 1988), the government appealed the decision of the district court dismissing the indictment against a Greek citizen who had been accused of mail fraud and filing fraudulent income tax returns. An arrest warrant had been issued in February 1984 but Michael Diacolios fled to Greece before the indictment was handed down in June of that

---

when visiting Guam, despite the fact that Dionisio had lived openly at the same address and practiced at the same clinic where the frauds were alleged to have taken place; there was a valid extradition treaty between the U.S. and the Philippines; and there was a possibility that the defendant would be prejudiced as a result of lost records and faded memories.

[8] In addition to Diacolios, discussed in the text above, there is another case which at least questions the point at which the Sixth Amendment right to a speedy trial attaches. In United States v. Tchibassa, 452 F.3d 918 (U.S. App. D.C. 2006), an Angolan citizen kidnapped a citizen of the United States who had been working in Angola in 1990. Eleven years after he had been indicted in the U.S., Tchibassa was arrested in Brazzaville, Congo, brought to the United States, tried and convicted. Before beginning its Sixth Amendment analysis, the Court of Appeals stated in a footnote:
> We assume *arguendo* that Tchibassa was entitled to a speedy trial under the Sixth Amendment *before he was arrested and brought to this country.* We therefore need not decide the question (not raised by the parties below or on appeal) whether the Sixth Amendment trial right attaches to a foreign national – charged with a crime committed outside United States territory – while he remains outside our borders.

Tchibassa, 452 F.3d at 921, n.1 (emphasis added by this Court.) Since less than 8 months elapsed between his arrest and his motion to dismiss the indictment, it would seem that no Sixth Amendment analysis would have been necessary if the right only attached after Tchibassa was actually within the jurisdiction of the United States.

9

year. He did not appear at the preliminary hearing and argued through counsel that he could not afford to return to the United States. In March 1985, the government informed the court that it did not believe Diacolios was subject to extradition and moved to have a trial date continued indefinitely. A year later, the defendant moved to dismiss the indictment under the Sixth Amendment speedy trial clause. Diacolios, 837 F.2d at 80-81. Apparently not asking itself whether Diacolios had such a right inasmuch as he was a foreign national living outside the United States, the district court concluded that the delay was caused in large part by the government's failure to exercise due diligence in seeking the defendant's extradition to the United States. Id. at 81-82. On appeal, the Second Circuit Court of Appeals never questioned whether the district court had erred simply by engaging in this analysis, but concluded instead that the lower court had erred for a different reason. That is, the government had argued below that it was United States diplomatic policy not to seek extradition of Greek citizens living in Greece and had produced affidavits and other evidence to support that argument. The Court of Appeals concluded that such evidence supported the government's claim of having pursued Diacolios diligently and that the delay in bringing him to trial was the result of the government adhering to diplomatic policies

and thus excusable. The Court remanded the case to the district court to reinstate the indictment.

Although we find the Government's "invitation" for Defendant to voluntarily appear in the United States to be somewhat flippant, based on our reading of the cases cited above, we are compelled to agree that Koch, a foreign national presently residing outside the United States, has no Sixth Amendment right to a speedy trial or to other constitutional protections. The motion to dismiss the indictment is therefore denied without prejudice. An appropriate Order follows.

January 25, 2011                  /s/ William L. Standish
                                  William L. Standish
                                  United States District Judge